IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JAMES E. BROOKS, )
)
Plaintiff, )
) Civil Action No.: 10 C 6510
v. )
)
PACTIV CORPORATION, a Delaware ) Suzanne B. Conlon, Judge
corporation, and PRAIRIE PACKAGING, )
INC., a Delaware corporation and wholly )
owned subsidiary of Pactiv Corporation. )
)
Defendants. )

**MEMORANDUM OPINION AND ORDER**

Plaintiff James E. Brooks ("Brooks") brings this action against his former employers, Pactiv Corporation ("Pactiv") and Prairie Packaging, Inc. ("Prairie") (collectively, "defendants"), asserting violations of the Employee Retirement Income Security Act ("ERISA") and wrongful discharge under Illinois common law. Defendants move to dismiss the second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the motion is granted.

**BACKGROUND**

The following facts are taken from the second amended complaint.[1] In July 1998, Brooks began working as an assembly line operator at the Prairie Packaging plant in Bedford Park,

---

[1] In briefing the motion, both parties refer to material from plaintiff's first complaint, which was filed *pro se*. An amended pleading supercedes the original, and facts not incorporated into the successive pleading are considered *functus officio*. *Kelley v. Crosfield Catalysts*, 135 F.3d 1202, 1204 (7th Cir. 1998). Because the submission of materials beyond the complaint is improper under Fed. R. Civ. P 12(b)(6), the court solely considers those facts found in the second amended complaint.

Illinois. 2d Am. Compl. ¶¶ 15-16. In June 1999, Brooks' left hand was pulled into a grinder machine at work. *Id.* ¶ 17. This incident left Brooks with serious physical and mental impairments. *Id.* ¶¶ 19-33. At some point in 1999, Brooks filed a case before the Illinois Workers' Compensation Commission. *Id.* ¶ 38. Over the course of that proceeding, he has received over $100,000 in wage compensation, as well as the payment of certain medical bills. *Id.* ¶¶ 41, 44. The workers' compensation case is still pending. *Id.* ¶ 38.

Brooks has been unable to work since the accident. *Id.* ¶ 33. However, until May 2010, defendants treated him as being on a "company-approved [sic] leave of absence," providing him and his children with the medical and dental benefits offered to other company employees. *Id.* ¶ 51. This assistance, which came through the Prairie Packaging Inc. Benefits Program, has significantly lightened the heavy load of Brooks' ongoing medical expenses, which have thus far exceeded $200,000. *Id.* ¶ 46. Brooks claims his right to these benefits "fully vested" and it was his "understanding at all times prior to March 2010 that he had the ongoing right as a disabled employee on leave to use the benefits provided through the Prairie Benefits Program." *Id.* ¶ 56. The only "summary descriptions" of the Benefits Program were found in the "Annual Enrollment Guide" and Brooks was never told these benefits could be extinguished based on his inability to work. *Id.* ¶¶ 58-59. Blue Cross Blue Shield of Illinois ("Blue Cross") was the provider during the period from January 2007 through May 2010. *Id.* ¶ 65.

In or about June 2007, Pactiv acquired all of Prairie's stock. *Id.* ¶ 11. Despite the ownership change, Brooks continued to receive benefits. *Id.* ¶¶ 62, 64. From 2007 through 2009, Blue Cross paid $22,272.77 of Brooks' $32,947.84 in medical bills. *Id.* ¶ 65. In early 2010, Brooks' medical expenses escalated, as he incurred over $7,400 in medical expenses in

January, $6,521.00 of which were paid by Blue Cross. *Id.* ¶ 68.

On March 1, 2010, a Pactiv regional human resources manager wrote to Brooks and his attorney in the workers' compensation proceeding. *Id.* ¶ 71. This letter noted that, since acquiring Prairie, Pactiv had been conducting a "thorough review and audit of all open and existing workers [sic] compensation cases." *Id.*, 3/1/10 Letter, Ex. A to 2d Am. Compl. This audit "discovered" that Brooks had been on workers' compensation medical leave since June 1999. *Id.* The letter asked Brooks to provide documentation by March 31, 2010 that he would be able to return to work in a safe and effective manner. *Id.* If Brooks failed to provide this information, he was to be let go on May 3, 2010. *Id.* The letter specified that upon termination, his benefits would end. *Id.* In conclusion, the letter noted that "this action does not under any circumstances affect or impact [Brooks'] ability to continue to receive workers [sic] compensation benefits he may be entitled to." *Id.*

On May 3, 2010, defendants terminated Brooks pursuant to the March 1, 2010 letter. *Id.* ¶ 73. Brooks was provided with little information explaining the termination of his employment and benefits and the steps for appealing these actions. *Id.* ¶¶ 92-97. He alleges that when this letter was sent, defendants were aware of his injuries, his inability to return to work, and his high medical expenses – both in the past, and moving forward. *Id.* ¶¶ 76, 80. Contrary to the reasons presented in the March 1, 2010 letter, Brooks claims he was terminated with the intent to: 1) retaliate against him for taking advantage of his medical and dental benefits, 2) prevent him from using his health benefits in the future, 3) retaliate against him for pursuing his workers' compensation claim, and 4) to hinder that pending claim by forcing him to either "renounce the reality of his permanent and total disability" or lose his workplace-provided health insurance. *Id.*

3

¶ 83.

**LEGAL STANDARD**

A complaint will be dismissed when its allegations "fail[ ] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When addressing a motion to dismiss, the court accepts the complaint's factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 493 (7th Cir. 2011). To withstand a motion to dismiss, a plaintiff is required to allege enough facts to render the claims not just conceivable, but plausible. *See Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct 1955, 167 L.Ed.2d 929 (2007).

**DISCUSSION**

Brooks alleges the following counts: 1) retaliatory termination based on access to health insurance benefits, arising under ERISA § 510, 29 U.S.C. § 1140; 2) breach of fiduciary duty based on the recision of health insurance benefits, under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3); 3) wrongful cancellation and denial of health and dental policies, under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B); and 4) wrongful discharge in violation of public policy under Illinois common law, based on The Illinois Workers' Compensation Act, 820 ILCS 305. The ERISA claims are premised on the Benefits Program being an "employee welfare benefits plan," as defined by 29 U.S.C. § 2003(1).

The court will consider each count in turn. As a preliminary matter, however, the court considers Brooks' underlying implication that he was somehow entitled to permanent employment and benefits from his former employer. According to Brooks, he had a right to

4

employee benefits that had "fully vested," apparently because he received these benefits during the 11 years following his accident. 2d Am. Compl. ¶¶ 14, 53. It was his "understanding" that he had an "ongoing right" to the benefits, and he received no indication that the benefits could be extinguished. *Id.* ¶ 58. Although the complaint artfully uses language associated with contract formation – i.e., "Plaintiff was offered, accepted, and received . . . benefits" – nothing in the pleadings suggests that such an exceptional arrangement actually existed. *Id.* ¶ 53. Brooks notes a series of Annual Enrollment Guides, claiming it was "expressly understood that disabled employees could continue to receive benefits under the plan." *Id.* ¶ 103. The complaint neither includes these Annual Enrollment Guides nor actual language from the guides. The court accepts as true Brooks' subjective understanding of these guides but fails to find any indication that defendants actually granted Brooks inextinguishable employment and/or benefits. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555). The pleadings do not plausibly suggest the existence of any sort of agreement guaranteeing Brooks employment and/or benefits for life.

Rather, Brooks was an at-will employee. Illinois law is clear that an employer is generally able to discharge an at-will employee for any reason or for no reason at all. *Hartlein v. Ill. Power Co.*, 151 Ill. 2d 142, 159 (Ill. 1992). More specifically, an employer is "not obligate[d] . . . to retain an at-will employee who is medically unable" to work. *Id.* at 159-160; *see also Feldman v. American Memorial Life Ins. Co.*, 196 F.3d 783, 793 (7th Cir. 1999) ("Employers who terminate an employee for absenteeism are not liable under Illinois law for retaliatory discharge, even if those absences stem from a legitimate disability."). The fact that

5

Brooks was allowed to receive benefits as an employee for 11 years, despite his inability to work, does not entitle him to permanent employment or benefits. *See Paz v. Commonwealth Edison*, 314 Ill. App. 3d 591, 599 (2d Dist. 2000) ("[An] employee's right to seek medical care does not require the employer to retain the employee forever . . . even if the injury was work-related."). Prior to his termination, Brooks did not have a guarantee of lifetime employment and benefits.

I. **Retaliatory Termination under ERISA § 510, 29 U.S.C. § 1140**

Under ERISA § 510, a beneficiary may challenge an employer who "discharge[s] . . . a participant or beneficiary [in an ERISA plan] for exercising any right to which he is entitled under the provisions of an employee benefit plan." 29 U.S.C. § 1140. Brooks claims defendants violated § 510 by terminating him for the purpose of preventing him from using his health insurance benefits. 2d Am. Compl. ¶¶ 106-110. He claims there was no other legitimate, nondiscriminatory reason for ending his employment. *Id.* ¶¶ 110-111.

Recovery under § 510 requires a plaintiff to demonstrate: 1) he is a member of an ERISA plan, 2) he was qualified for his position, and 3) he was discharged under circumstances that provide some basis for believing his employer intended to deprive him of such benefits. *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 943 (7th Cir. 2007). The second amended complaint establishes that Brooks was not qualified for his position. By his own account, "there was no way that [he] – who had no use of his left arm, who suffered from severe shoulder and spinal injuries, who was crippled by a debilitating psychiatric illness, and who suffered from a serious blood disorder – was going to secure an opinion or 'documentation' from any medical provider that he was able to resume employment." *Id.* ¶ 84. Furthermore, § 510 does not prohibit firing an employee who becomes less productive on account of a disability or illness.

6

*Lindemann v. Mobil Oil Corp.*, 141 F.3d 290, 298 (7th Cir. 1998).

Additionally, Brooks fails to plausibly allege that his discharge aimed to deprive him of his benefits. Brooks notes a slight jump in his medical spending immediately prior to his termination: from 2007 through 2009, Blue Cross paid $22,272.77 of his expenses and, in January 2010, Blue Cross paid $6,521.00. 2d Am. Compl. ¶ 65, 68. Brooks, however, had been receiving the benefits for 11 years, and had undergone over $200,000 in medical care and treatment for his work-related injury, apparently without any opposition from defendants. *Id.* ¶¶ 46, 49. Taken alone, the slight increase in medical expenses in January is not sufficiently suggestive of a retaliatory motive.

## II. Breach of Fiduciary Duty Under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3)

ERISA § 502(a)(3) allows a plan beneficiary to seek relief for breach of a fiduciary obligation for "any act or practice which violates any provision of ERISA or the terms of an ERISA plan." 29 U.S.C. § 1132(a)(3). Brooks alleges Pactiv, as the plan administrator of the Benefits Plan, had a fiduciary duty to act exclusively on Brooks' behalf. 2d Am. Compl. ¶ 116. Brooks claims Pactiv violated this duty by putting its own financial interest ahead of his interests as a participant in the Benefits Plan. *Id.* ¶ 116.

To prevail on a claim for breach of fiduciary duty under ERISA, a plaintiff must show defendants are plan fiduciaries who breached their fiduciary duties, and thereby caused harm to the plaintiff. *Kannapien v. Quaker Oats Co.*, 507 F.3d 629, 639 (7th Cir. 2007). Determining the fiduciary status of a plan administrator is often difficult, and courts in the district frequently decline to do so at the motion to dismiss stage. *See, e.g., Patten v. N. Trust Co.*, 703 F.Supp.2d 799, at 808-09 (N.D. Ill. 2010) (Lefkow, J.); *George v. Kraft Foods Global, Inc.*, No. 08 C 3799,

7

2009 WL 4884027, at *14 (N.D.Ill. Dec. 17, 2009) (Castillo, J.); *Porterfield v. Orecchio*, No. 07 C 3654, 2008 WL 130921, at *3 (N.D.Ill. Jan.9, 2008) (Gettleman, J.) ("[A] determination as to what extent an alleged fiduciary exercised control of ERISA plan assets is typically premature at the motion to dismiss stage because the court lacks sufficient facts to make the necessary analysis.").

Here, however, the court is able to determine that, in terminating Brooks, Pactiv was not acting as a plan fiduciary. In considering whether an entity is acting as an ERISA fiduciary, a court considers the entity's activity at issue. *Baker v. Kingsley*, 387 F.3d 649, 660 (7th Cir. 2004). An entity is an ERISA fiduciary only to the extent that it is engaging in discretionary acts of plan management or administration. *Varity Corp. v. Howe*, 516 U.S. 489, 502 (1996). Since corporate managerial decisions do not involve discretionary acts of plan management or administration, ERISA does not govern these actions. *Sutton v. BellSouth Telecom., Inc.*, 189 F.3d 1318, 1320-21 (11th Cir. 1999). The activity at issue here is Pactiv's decision to terminate Brooks. 2d Am. Compl. ¶ 119. This is a corporate managerial decision, and not a discretionary act of plan management or administration.

### III. Enforcement of Health Insurance Benefits Under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)

As one of ERISA's civil enforcement provisions, § 502(a)(1)(B) allows a plan participant "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Brooks contends that his "sudden[ ]" termination, and the corresponding termination of his benefits, was "arbitrary and capricious." *Id.* ¶¶ 127-128. Specifically, he

claims it was "downright unreasonable" because he had become accustomed to receiving the benefits over the last 11 years and, in terminating him, defendants only gave 30 days notice, no rights of appeal, and solely based the decision on his disability. *Id.* ¶ 128.

As previously discussed, Brooks did not have a lifetime guarantee of employment and benefits. Defendants' actions in terminating Brooks, an at-will employee, were not arbitrary or capricious: no reason, notice, or right of appeal was necessary. Moreover, in an action under ERISA § 502(a)(1)(b), the ERISA plan itself–*not* the plan administrator (i.e., defendants)–is generally the only proper defendant. *Neuma, Inc. v. AMP, Inc.*, 259 F.3d 864, 872 n.4 (7th Cir. 2001). In rare instances, a suit for benefits may proceed against an employer who is the plan administrator, if the employer and the plan are closely intertwined. *Mein v. Carus Corp.*, 241 F.3d 581, 585 (7th Cir. 2001); *Riordan v. Commonwealth Edison Co.*, 128 F.3d 549, 551 (7th Cir. 1997). Brooks does not allege any sort of intertwined relationship between defendants and Blue Cross–or any other provider–that could conceivably fall under this exception.

## IV. Retaliatory Discharge in Violation of Illinois Public Policy

Brooks commenced his workers' compensation case in 1999, seeking compensation for paid and unpaid medical bills as well future medical expenses. 2d Am. Compl. ¶¶ 138-139. He claims he was terminated for pursuing that case. *Id.* ¶ 140. He points to the Illinois Workers' Compensation Act, 820 ILCS 305/1, *et seq.*, to illustrate that the state has a policy interest in ensuring that workers are able to pursue the remedies afforded by this Act. *Id.* ¶ 141. Brooks argues that allowing employers to discharge employees based on their pursuit of workers' compensation cases would render the Act useless, and result in unsafe work environments. *Id.*

A claim for retaliatory discharge under Illinois law requires that a plaintiff prove he was

discharged in retaliation for his activities, and that the discharge violates a clear mandate of public policy. *Hartlein*, 151 Ill. 2d at 160. Brooks was discharged, but not until 2010, years after he filed his workers' compensation case. *Id.* ¶ 6. He does not present any facts that suggest these two events are related. The court does not find it plausible that Brooks was dismissed in retaliation for pursuing his workers' compensation case *eleven years* earlier.

## CONCLUSION

Defendants' motion to dismiss the second amended complaint is granted. This case is dismissed with prejudice.

ENTER:

December 23, 2011

Suzanne B. Conlon
United States District Judge